**No. 26-8018**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security, *et al.*,

*Defendants-Appellants*.

v.

AUNG DOE, *et al.*,

*Plaintiffs-Appellees*,

---

Petition for Permission to Appeal from the United States District Court for the Northern District of Illinois
Case No. 1:25-cv-15483—Matthew F. Kennelly, Judge.

---

**PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO DEFENDANTS-APPELLANTS' PETITION FOR PERMISSION TO APPEAL AND FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL**

## TABLE OF CONTENTS

**INTRODUCTION**......................................................................................................1

**BACKGROUND**......................................................................................................2

**LEGAL STANDARD**......................................................................................................3

**ARGUMENT**......................................................................................................4

**A. The Certified Order Does Not Present a Pure or Contestable Question of Law**......................................................................................................4

**B. Immediate Review Will Delay Resolution of the Dispute Because Discovery is Inextricably Intertwined with the Claim**......................................9

**C. A Stay of Proceedings Is Not Warranted**......................................................13

**CONCLUSION**......................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*African Communities Together v. Mullin* (“*ACT II”*), No. 26-cv-11201, 2026 WL 2364398 (D. Mass. Aug. 14, 2026) .......... 9

*African Communities Together. v. Mullin* (*“ACT I”*)*,* No. 26-cv-10278, 2026 WL 2408737 (D. Mass. Aug. 18, 2026) .......... 9

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674 (7th Cir. 2000) .......... 3, 4, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 10, 11

*Asher v. Baxter Int'l Inc.*, 505 F.3d 736 (7th Cir. 2007) .......... 3

*Aung Doe v. Mullin*, 26-cv-1294, Dkt. 34 (7th Cir. Jul 16, 2026) .......... 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-cv-0751, 2015 WL 12028458 (S.D. Cal. Mar. 14, 2015) .......... 5

*CASA de Maryland, Inc. v. Trump*, 355 F.Supp.3d 307 (D. Md. 2018) .......... 8

*CASA, Inc. v. Mullin*, Civil Action No. 24-1484, 2025 WL 3514378 (D. Md. Dec. 8, 2025) .......... 8

*Centro Presente v. U.S. Dep't of Homeland Sec.*, 332 F.Supp.3d 393 (D. Mass. 2018) .......... 8

*Cook County v. Wolf*, 461 F. Supp. 3d 779 (N.D. Ill. 2020) .......... 12

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) .......... 3, 7

*Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727 (N.D. Ill. 2023) .......... 9

*Demkovich v. St. Andrew the Apostle Par., Calumet City*, 973 F.3d 718 (7th Cir. 2020) .......... 6

*Feit Electric Co., Inc. v. CFL Technologies, LLC*, No. 13-cv-09339, 2019 WL 7020496 (N.D. Ill. Dec. 20, 2019) .......... 6

*Fisons Ltd. v. United States*, 458 F.2d 1241 (7th Cir. 1972) .......... 13

*Flynn v. Exelon Corp.*, No. 19 C 8209, 2022 WL 267915 (N.D. Ill. Jan. 28, 2022) .......... 6

*Gookins v. Cnty. Materials Corp.*, No. 1:19-cv-00867, 2019 WL 3282088 (S.D. Ind. July 18, 2019) .......... 14

*Herdrich v. Pegram*, 154 F.3d 362 (7th Cir. 1998) .......... 3

*Holwill v. AbbVie, Inc.*, No. 1:18-cv-06790, 2021 WL 154098 (N.D. Ill. April 19, 2021) .......... 5

*In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010) .......... 4, 5

*Int'l Refugee Assistance Proj. v. Trump*, 961 F.3d 635 (4th Cir. 2020) .......... 12

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) .......... 14

*Lukis v. Whitepages, Inc.*, 542 F.Supp.3d 831 (N.D. Ill. 2020) .......... 5

*McFarlin v. Conseco Services*, *LLC*, 381 F.3d 1251 (11th Cir. 2004) .......... 6

*Miot v. Trump*, 25-cv-02471, Dkt. 144 (D.D.C. Aug. 5, 2026) .......... 9, 13

*Miot v. Trump*, 818 F.Supp.3d 126 (D.D.C. 2026) .......... 8

*Mullin v. Doe*, 146 S. Ct. 2121 (2026) .......... passim

*NAACP v. U.S. Dep't of Homeland Sec.*, 364 F.Supp.3d 568 (D. Md. 2019) .......... 8

*Nat'l TPS All. v. Mullin*, 25-cv-01766, Dkt. 457 (N.D. Cal. Aug. 10, 2026) .......... 9

*Nat'l TPS All. v. Noem*, 773 F.Supp.3d 807 (N.D. Cal. 2025) .......... 8

*Nat'l TPS All. v. Noem*, 798 F.Supp.3d 1008 (N.D. Cal. 2025) .......... 8

*Osundairo v. Glandian*, No. 19-C-2727, 2023 WL 12188478 (N.D. Ill. Feb. 17, 2023) .......... 6

*Saget v. Trump*, 345 F.Supp.3d 287 (E.D.N.Y. 2018) .......... 8

*Smith v. Town of Clarkton*, 682 F.2d 1055 (4th Cir. 1982) .......... 12

*Trump v. Hawaii*, 585 U.S. 667 (2018) .......... 13

*Union Cty. v. Piper Jaffray & Co., Inc.*, 525 F.3d 643 (8th Cir. 2008) .......... 7

*United States. v. All Funds on Deposit with R.J. O'Brien & Ass.*, No. 11 C 4175, 2012 WL 13209677 (N.D. Ill. Dec. 10, 2012) .......... 7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .......... 4, 10, 11

## INTRODUCTION

Defendant-Appellants' ("the government") petition for appeal here asks this Court to take premature action on Plaintiffs' plausible claim that Burma's Temporary Protected Status ("TPS") designation was terminated in part because of racial animus against non-white immigrants. The government requests immediate review in order to cut off any further fact development and thorough review of the issue. Despite no other court, including the Supreme Court, foreclosing the race or national-origin based equal protection claims in the context of a motion to dismiss, the government argues that this Court should assess the issue now without the benefit of evaluating the District Court record and decision on the full set of facts.

The government cannot meet its heavy burden to justify interlocutory review of the District Court's ruling allowing Plaintiffs to move forward on their equal protection claim. First, whether Plaintiffs plausibly alleged an equal protection claim is not a pure "question of law," but one that necessarily relates to factual analysis. Second, the issue is not contestable, as mere disagreement with the District Court's assessment, without more, cannot establish that there is substantial ground for difference of opinion on the equal protection claim. Third, discovery will enable a more efficient resolution of the issue and should not be foreclosed by the Supreme Court's analysis regarding the propriety of interim relief in *Mullin v. Doe*. No other case has proceeded to appeal at this stage, and multiple courts are explicitly allowing discovery to move forward on the equal protection claim, including the district court evaluating the Haiti TPS case that was the subject of the Supreme Court's decision in *Mullin*. The two other issues that the government raises—which the District Court tellingly chose not to certify—fare even worse under the exacting requirements for interlocutory appeal. Specifically, every court to consider these questions has resolved them in a manner consistent with the District Court, and the government offers no reasons why this Court

would reach a different outcome. Accordingly, this Court should reject the government's strategy of throwing every argument at the wall to see what sticks.

A stay is also not justified because it will only delay final resolution of the proceedings, and will prejudice Plaintiffs by delaying their ability to seek relief on their remaining claim.

For these reasons, the Court should reject immediate review here and instead allow the District Court to proceed with final evaluation of the race-based equal protection claim.

## BACKGROUND

Six Burmese TPS holders brought the underlying class action to challenge the illegal termination of TPS for Burma, a nation still mired in humanitarian crisis and conflict following a military coup in 2021. The District Court postponed the effective date of the termination on January 23, 2026, finding that Plaintiffs had a likelihood of success on their claims arising under the Administrative Procedure Act, reserving the constitutional claim that the termination was motivated by racial and national origin animus. D. Ct. Dkt. 51. Defendants appealed the postponement order, and after the Supreme Court's ruling in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), interpreted the TPS statute's jurisdictional bar to preclude Plaintiffs' non-constitutional claims, this Court summarily reversed the postponement order and remanded to the District Court. *Aung Doe v. Mullin*, 26-cv-1294, Dkt. 34 (7th Cir. Jul 16, 2026).

Plaintiffs filed an amended complaint on July 14, 2026, alleging new claims. D. Ct. Dkt. 90. After Plaintiffs filed a renewed motion to postpone on the basis of two of their new claims, D. Ct. Dkt. 99, Defendants moved to stay discovery, D. Ct. Dkt. 108, and to dismiss *all* of Plaintiffs' claims, including the equal protection arguments. D. Ct. Dkt. 110. The District Court did not order briefing on the motion to dismiss, and Plaintiffs lacked the opportunity to fully brief or argue the motion before the Court ruled. On August 7, 2026, the District Court denied Plaintiffs' renewed

postponement motion, dismissed all claims aside from the race-based equal protection claim, and "certifie[d] that denial for interlocutory appeal under 28 U.S.C. § 1292(b)." D. Ct. Dkt. 115. Plaintiffs timely filed a motion for reconsideration of the dismissal due to the lack of opportunity to fully brief the motion and the District Court's misapprehension of one of the arguments. D. Ct. Dkt. 117.

## LEGAL STANDARD

Appeals taken under 28 U.S.C. § 1292(b) "must be used sparingly lest interlocutory review increase the time and expense required for litigation," *Asher v. Baxter Int'l Inc.*, 505 F.3d 736, 741 (7th Cir. 2007); *Herdrich v. Pegram*, 154 F.3d 362, 367–68 (7th Cir. 1998), rev'd on other grounds, 530 U.S. 211 (2000) ("Generally speaking, interlocutory appeals are disfavored, and appellate courts are reluctant to exercise their discretion to grant such requests, as they all too frequently cause unnecessary delays in lower court proceedings and waste the resources of an already overburdened judicial system."). "[E]ven if the district judge certifies the order under § 1292(b), the appellant still 'has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972). That burden necessitates the satisfaction of all statutory criteria necessary to grant application under Section 1292(b): "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original).

## ARGUMENT

### A. The Certified Order Does Not Present a Pure or Contestable Question of Law

The District Court's order does not meet the statutory criteria for an immediate appeal under Section 1292(b) because it does not present a question of law as defined by this Court. To constitute a "question of law" under Section 1292(b), the question must be a "pure" question of law, "something the court of appeals could decide quickly and cleanly without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d. at 676-77. Put differently, "question of law," as referred to in Section 1292(b), means an "abstract legal issue." *Id.* at 677.

The government asks this Court to review the District Court's ruling that Plaintiffs plausibly alleged an equal protection claim under the standard articulated in *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). But whether the District Court correctly applied settled law to the facts alleged in the complaint does not present "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," *Ahrenholz*, 219 F.3d at 676, meriting interlocutory review. Though this Court has authorized an appeal under Section 1292(b) on the question of a complaint's adequacy, it did so under exceptional circumstances (not present here), reiterated the general rule established by *Ahrenholz*, and cautioned against a broad reading of its decision. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010). Specifically, the decision in *In re Text Messaging* authorized an interlocutory appeal to consider whether a complaint plausibly alleged antitrust violations under the standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In so holding, this Court distinguished *Ahrenholz* on the ground that *Twombly* was a "recent decision, and its scope unsettled," leaving "[pleading standards in federal litigation . . . in ferment,"

*In re Text Messaging*, 630 F.3d at 626-27, while reiterating that "routine applications of well-settled legal standards to facts alleged in a complaint" are inappropriate for interlocutory appeal. *Id.* at 626.

District courts interpreting *In re Text Messaging* have since confirmed the decision's narrow holding. *See, e.g.*, *Lukis v. Whitepages, Inc.*, 542 F.Supp.3d 831, 844 (N.D. Ill. 2020) (decision denying defendants' motion to dismiss, which was "case specific and fact intensive," did not qualify for the "narrow exception recognized in *Text Messaging*," therefore making interlocutory appeal inappropriate); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-cv-0751, 2015 WL 12028458, at *3 (S.D. Cal. Mar. 14, 2015) (reliance on *In re Text Messaging* to justify interlocutory appeal of order dismissing claims under Rule 12(b)(6) misplaced because decision was issued when *Twombly* was a "recent decision, and its scope unsettled"). Indeed, "if the issue of whether a plaintiff satisfied a well-developed pleading standard qualifies as a controlling question of law under § 1292(b), then *every* denial of a motion to dismiss would be subject to an interlocutory appeal in direct contradiction of the long-recognized principle that '[i]nterlocutory appeals are frowned on in the federal judicial system.'" *Holwill v. AbbVie, Inc.*, No. 1:18-cv-06790, 2021 WL 154098, at *1 (N.D. Ill. April 19, 2021) (quoting *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis added)).

Here, the government has failed to present the type of pure question of law that this Court could resolve neatly and quickly, as contemplated by Section 1292(b). To the contrary, the disputed District Court ruling requires the application of the *Arlington Heights* standard—a standard which is inherently fact-intensive—to the complaint's factual allegations to determine the plausibility of Plaintiffs' equal protection claim in light of the *Mullin* decision. Indeed, that the complaint is 82 pages long—with the vast majority of those pages setting forth factual

allegations—underscores why the District Court's analysis of Plaintiffs' equal protection claim is inappropriate for interlocutory appeal. *See* D. Ct. Dkt. 90. So, too, does the government's own petition. Specifically, the government's petition discusses the facts not only of this case but also the factual records in litigation challenging the termination of TPS for Haiti and Somalia to make their principal arguments about how *Mullin* affects the plausibility of Plaintiffs' equal protection claim. Defs.' Pet. for Appeal, Dkt. 2 at 8, 11-12. Simply put, the government's' petition does not raise an "abstract legal issue that [this Court] could decide without studying the record," *Osundairo v. Glandian*, No. 19-C-2727, 2023 WL 12188478, at *2 (N.D. Ill. Feb. 17, 2023), but instead "depends on the particular facts alleged in this case." *Id.; see also McFarlin v. Conseco Services*, *LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("The antithesis of a proper 1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case."); c*f. Demkovich v. St. Andrew the Apostle Par., Calumet City*, 973 F.3d 718, 721 (7th Cir. 2020) (accepting an interlocutory appeal on a "broad legal question, not limited to the factual details of the particular case"), *vacated on other grounds* (Dec. 9. 2020).

Nor can the government show that the District Court's ruling presents a contestable issue. What constitutes a "contestable" question under Section 1292(b) is open to interpretation. *Flynn v. Exelon Corp.*, No. 19 C 8209, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022). But courts in this Circuit have held that an order is contestable "if there are substantial conflicting decisions regarding the claimed controlling issues of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Id.* (collecting cases). Reversal is "more likely" if there are a "substantial number of decisions conflicting with the district court's order regarding the controlling question of law." *Feit Electric Co., Inc. v. CFL Technologies, LLC*, No. 13-cv-09339, 2019 WL 7020496, at *2 (N.D.

Ill. Dec. 20, 2019) (citation modified). Section 1292(b) is "'not intended merely to provide review of difficult rulings in hard cases.'" *Union Cty. v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646 (8th Cir. 2008) (quoting *U.S. Rubber Co v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam)).

The government falls far short of this heavy burden. Its sole argument on contestability is that the Supreme Court's equal protection analysis in *Mullin* could be interpreted more broadly than how the District Court applied it to the government's motion to dismiss. Dkt. 2 at 8. Specifically, in their view, *Mullin* forecloses Plaintiffs' equal protection claim. *Id.* at 9. But a party's disagreement with the District Court's ruling or even the District Court's own assessment that there is "substantial ground for difference of opinion" cannot—without more—satisfy the "exceptional circumstances" required to justify departure from "the basic policy of postponing appellate review until after the entry of final judgment." *Coopers*, 437 U.S. at 475 (citation modified). For instance, the government has not cited any case law, controlling or otherwise, to contradict the District Court's application of *Mullin* to their motion to dismiss. *See United States. v. All Funds on Deposit with R.J. O'Brien & Ass.*, No. 11 C 4175, 2012 WL 13209677, at *1–2 (N.D. Ill. Dec. 10, 2012) (the government failed to satisfy contestability requirement for interlocutory appeal where it cited to no case law addressing the issues raised). And that the District Court's order raises an unsettled question may "make the issue more difficult and debatable," but does not alone make interlocutory appeal appropriate. *Id. at* *1. Moreover, as discussed below, *supra* Section B, multiple courts have allowed discovery to proceed on equal protection challenges to TPS terminations, including the equal protection claim brought by Haitian plaintiffs that was the subject of the *Mullin* decision.

The two other questions the government raises for this Court's consideration—whether the TPS judicial review bar, 8 U.S.C. § 1254a(b)(5)(A), applies to constitutional claims and whether

rational-basis review applies to Plaintiffs' equal protection claim—likewise fail on contestability. Notably, the District Court saw no reason to certify either of these issues for interlocutory appeal—and the legal landscape makes clear why. On the jurisdictional issue, *Mullin*, 146 S. Ct. at 2137, assumed that the judicial review bar does not prohibit constitutional challenges to TPS decisionmaking—a question that the government explicitly declined to raise in that case in consideration of Supreme Court precedent requiring clear congressional intent to preclude judicial review of constitutional claims. Transcript of Oral Argument at 26–27, *Mullin v. Doe*, Nos. 25-1083 & 25-1084 (U.S. Apr. 29, 2026). And every court to weigh in on this question since *Mullin*, including the District Court in this case, has refused to find otherwise. *See* D. Ct. Dkt. 115 at 20; *African Communities Together v. Mullin* ("*ACT II*"), No. 26-cv-11201, 2026 WL 2364398, at *5 (D. Mass. Aug. 14, 2026); *African Communities Together. v. Mullin* (*"ACT I"*)*,* No. 26-cv-10278, 2026 WL 2408737, at *5 (D. Mass. Aug. 18, 2026). In a similar vein, the Supreme Court assumed that *Arlington Heights* applied to the Haitian TPS holders' equal protection claim in *Mullin*, 146 S. Ct. at 2138, and the government does not cite to any cases that opt instead to apply rational-basis review to equal protection challenges in the TPS context. Nor can they. Every court to consider the issue has either explicitly concluded that *Arlington Heights* supplies the proper standard of review or followed *Mullin*'s example of assuming without deciding. *See NAACP v. U.S. Dep't of Homeland Sec.*, 364 F.Supp.3d 568, 576 (D. Md. 2019); *CASA de Maryland, Inc. v. Trump*, 355 F.Supp.3d 307, 322 (D. Md. 2018); *Centro Presente v. U.S. Dep't of Homeland Sec.*, 332 F.Supp.3d 393, 410–12 (D. Mass. 2018); *Saget v. Trump*, 345 F.Supp.3d 287, 301–04 (E.D.N.Y. 2018); *CASA, Inc. v. Mullin*, Civil Action No. 24-1484, 2025 WL 3514378, at *4 (D. Md. Dec. 8, 2025); *Nat'l TPS All. v. Noem*, 798 F.Supp.3d 1008, 1032 (N.D. Cal. 2025); *Nat'l TPS All. v. Noem*, 773 F.Supp.3d 807, 858 (N.D. Cal. 2025); *Miot v. Trump*, 818 F.Supp.3d 126, 176

(D.D.C. 2026); *ACT I*, 2026 WL 2408737, at *6–7; *ACT II*, 2026 WL  2364398, at *8.

In sum, this Court should reject the government's efforts to throw open the door and usher in additional issues that the District Court did not certify and that government cannot independently demonstrate are legitimately contestable.

**B. Immediate Review Will Delay Resolution of the Dispute Because Discovery is Inextricably Intertwined with the Claim**

The government's argument that this Court's intervention now will "*speed up* the litigation," Dkt. 2 at 14 (citing *Ahrenholz*, 219 F.3d at 675 (emphasis in original), asks this Court to rush a legal decision before any court has had the opportunity to evaluate the full scope of the facts. That move is premature and will likely slow down final resolution by requiring a lengthy evaluation of the issue on appeal, with no movement on the fact-development in the District Court.

Multiple courts have already indicated discovery can move forward on the equal protection claims in parallel TPS cases. *See, e.g., Miot v. Trump*, 25-cv-02471, Dkt. 144 (D.D.C. Aug. 5, 2026) (rejecting stay of discovery in relation to remaining equal protection claim); *Nat'l TPS All. v. Mullin*, 25-cv-01766, Dkt. 457 (N.D. Cal. Aug. 10, 2026) (ordering production of documents material to Plaintiffs' equal protection claims); *ACT I*, 26-cv-10278, 2026 WL 2408737 (D. Mass. Aug. 18, 2026) (denying motion to dismiss in relation to equal protection claim and ordering submission of proposed discovery schedule). All of these decisions post-date *Mullin*, and no court has held that *Mullin* forecloses necessary fact development in TPS cases regarding whether the government engaged in racial discrimination.

The development of further facts is warranted here and relevant to the final assessment of the equal protection claim. Plaintiffs are entitled to a presumptively broad scope of discovery to unearth evidence that is relevant to their claim, regardless of whether they ultimately prevail. *See Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727, 732 (N.D. Ill. 2023) ("The scope of

discovery in federal court is broad."). The government overstates the effect of the *Mullin* decision, which was the reversal of a preliminary order postponing the termination of TPS for Haiti on an incomplete record, not a final ruling on the merits. The government argues the reasoning in *Mullin* regarding the possible "race neutral" explanations for the termination of TPS defeats plausibility under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Dkt. 2 at 2, 9–10. While the Supreme Court held that the Haitian plaintiffs did not establish a likelihood of success on the merits of their equal protection claim in *Mullin*, *see* 146 S. Ct. at 2140, it explicitly did not address any final judgment of the merits itself. *See id.* at 2137 ("When interim relief is sought, however, a court *does not make a final decision on any matter necessary to the ultimate judgment*") (emphasis added). Plaintiffs' claims remain plausible here. While not definitively settling the issue, the Supreme Court assumed that the *Arlington Heights* standard of review applied to equal protection challenges to TPS terminations. *Mullin*, 146 S. Ct. at 2138. And under *Arlington Heights*, courts must assess whether "invidious discriminatory purpose was a motivating factor" by conducting a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. at 266. A ruling, based on a developing factual record, that TPS holders from a different country are not entitled to interim relief does not foreclose Burmese TPS holders from pursuing their equal protection claim or discovery related to that claim.

While *Mullin* foreclosed Plaintiffs' statutory claims, many factual issues remain regarding whether discriminatory animus motivated the decision to terminate Burma's TPS. For example, the Secretary's failure to consult appropriate agencies and inclusion of irrelevant factors in the termination notice, despite years of prior contrary practice and the statute's requirements, are precisely the kind of procedural and substantive "departures" *Arlington Heights* contemplates may be circumstantial evidence of discriminatory intent. *Id.* at 267. The Supreme Court notably

declined to comment on the strength of any *Arlington Heights* factors other than decisionmaker statements. Discovery on the racial animus claim may very well reveal evidence of discriminatory intent beyond decisionmaker statements or give additional context to those statements when read in conjunction with the government's actions.

And even where the Supreme Court gave weight to possible race-neutral explanations in their equal protection analysis in *Mullin*, it assessed these statements under the likelihood of success standard for preliminary relief, without the benefit of discovery or a fully developed record. The Supreme Court did not say that the decisionmaker statements *could not plausibly* be read as motivated in part by racial animus, as would be relevant to the Rule 12(b)(6) analysis, but said only that they "could rest on race-neutral justifications." *Mullin*, 146 S. Ct. at 2138; s*ee also Iqbal*, 556 U.S. at 678 (explaining that court must take all Plaintiffs' allegations as true in assessing whether court can make "reasonable inference that the defendant is liable.") (citation modified). While the Supreme Court held that preliminary relief was not warranted in light of those potential race-neutral justifications, taking Plaintiffs' allegations as true, the statements in the record and allegations of departures suggesting discriminatory pretext, when combined with the possibility of additional factual development, still provide a plausible basis for liability on the race-based claim. *See, e.g.*, D. Ct. Dkt. 90 at ¶¶ 124 (Noem referring to non-white, non-European immigrants as "dirt bags," and labeling them as "criminals"), 125 (Noem describing migration as "an invasion happening on purpose…to remake the foundation of this country), 129 (Noem describing people from countries that are part of the travel ban as "killers," "leeches," and "foreign invaders," and stating "WE DON'T WANT THEM. NOT ONE."). In its decision, the District Court recognized:

> *Arlington Heights* calls for a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. And based on the public statements here, it seems plausible that the plaintiffs could uncover evidence that might have changed the outcome in *Mullin*.

D. Ct. Dkt. 115 at 24.

Furthermore, the government's petition mischaracterizes the amended complaint here by wrongly suggesting that Plaintiffs allege only that the termination of TPS for Burma was motivated by "racial prejudice against people from Burma" and thus their claim is "substantially weaker" than those that the Supreme Court found not "overtly racial" when brought by the Haitian TPS holders in *Mullin v. Doe*. Dkt. 2 at 12. But the lack of factual allegations pertaining to *Burma*-specific animus is irrelevant to Plaintiffs' equal protection claim, which rests on a broader racial classification. Specifically, as the district court recognized, D. Ct. Dkt. 115 at 23, Plaintiffs allege that the termination of TPS for Burma was part of a policy directed by animus toward "non-white, non-European" people, and the complaint includes clear allegations of racial animus toward that racial classification, including DHS invocations of slogans associated with white nationalism, D. Ct. Dkt. 90 at ¶¶ 126-129, and Presidential condemnations of "Third World migration" and those from "shithole countries," whom he contrasted with people from Norway, Sweden, and Denmark, R. 90 at ¶¶ 131, 134-37.

Plaintiffs' ability to prove the requisite discriminatory intent and motive requires discovery exclusively in the government's' possession as to decisionmakers' subjective thoughts, knowledge, and beliefs at the time these decisions were being made, not sanitized public statements. *Cf. Cook County v. Wolf*, 461 F. Supp. 3d 779, 794 (N.D. Ill. 2020) ("Most people know by now that the quiet part should not be said out loud."); *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982) ("[O]fficials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority.").

The government's attempt to rely on *Int'l Refugee Assistance Proj. v. Trump*, 961 F.3d 635

(4th Cir. 2020) ("*IRAP*") is similarly misplaced. *IRAP* related to proceedings after the Supreme Court rejected preliminary relief and explicitly held that a deferential standard of review applied in *Trump v. Hawaii*, 585 U.S. 667 (2018). Further proceedings and discovery were held to no longer be warranted given the plaintiffs "fail[ed] to account for the extremely deferential nature of the rational basis standard." *IRAP*, 961 F.3d at 653. By contrast, *Mullin* did not apply the deferential standard from *Trump v. Hawaii* and emphasized that the opinion did "not make a final decision on any matter necessary to the ultimate judgment." *See* 146 S. Ct. at 2137. And in fact, the equal protection claim analyzed in *Mullin* has continued to proceed at the district court level, and further discovery has been authorized. *See Miot*, 25-cv-02471, Dkt. 144 (D.D.C. Aug. 5, 2026). That is instructive here.

In sum, the government's attempt to circumvent thorough review of the facts is premature and detrimental here. *Mullin* does not foreclose Plaintiffs' equal protection claim, and the correct approach is for the District Court to evaluate the claim at summary judgment.

**C. A Stay of Proceedings Is Not Warranted**

Section 1292(b) specifically provides that an "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." This Court has opined that "a stay of proceedings in the district court pending an appeal to this court will seldom, if ever, be appropriate," *Fisons Ltd. v. United States*, 458 F.2d 1241, 1248 at n. 16 (7th Cir. 1972), and that courts must take "special care" to avoid the risk of impeding rather than expediting the underlying legal proceedings. *Id.* at 1248.

"Special care" is especially warranted here, where any further delay in discovery on Plaintiffs' equal protection claim serves to harm Plaintiffs, not the government. The government has already secured the relief they sought: a termination of Burma's TPS. A stay of discovery

would not contribute to a speedy resolution of the case; it would only delay the possibility of the District Court assessing the facts and the potential for relief in relation to Plaintiffs' equal protection claim.

The government cannot establish "a clear case of hardship" that merits a stay of district court proceedings. *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). The sole concern raised by the government is that the discovery process would force them to litigate "privilege disputes over core Executive Branch deliberations," Dkt. 2 at 15. That's not enough for the government to meet its burden and justify why all discovery should "grind to a halt." *Gookins v. Cnty. Materials Corp.*, No. 1:19-cv-00867, 2019 WL 3282088 at *1 (S.D. Ind. July 18, 2019). And the lone authority the government relies on in support of a stay is *IRAP*, an out-of-circuit order that provides no reasoning or explanation for why the Fourth Circuit opted to stay lower court proceedings on a Section 1292(b) appeal when the district court had declined to do so.

## CONCLUSION

Based on the above reasons, the petition for permission to appeal and the request for a stay of district court proceedings should be denied.

ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
*/s/ Dinesh McCoy*
Dinesh McCoy
Phi Nguyen
Razeen Zaman
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
dmccoy@aaldef.org
pnguyen@aaldef.org
rzaman@aaldef.org
njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
/s/ *June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE ASSISTANCE PROJECT
/s/ *Guadalupe Aguirre*
Guadalupe Aguirre
Ghita Schwarz
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave
NW Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type limitations provided in Federal Rule of Appellate Procedure 32(a)(7). The foregoing brief was prepared using Microsoft Office 15 and contains 4,437 words in 12-point proportionately spaced Times New Roman font.

/s/ Dinesh McCoy
Dinesh McCoy

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Service will be made on all ECF-registered counsel by operation of the Court's electronic system.

/s/ Dinesh McCoy
Dinesh McCoy

*Counsel for Appellees*